**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| SUMMIT CONTRACTORS, INC.,            ) | |
|          Plaintiff,                                   ) | |
| vs.                                                       ) | Case No. CIV-04-580-M |
| LEGACY CORNER, L.L.C., and          )<br>MIVON, L.L.C.,                                   ) | |
|          Defendants/Third-party Plaintiffs,  ) | |
| vs.                                                       ) | |
| JOHN DOES 1-3,                                  )<br>JAMES HARWICK + PARTNERS, INC.,  ) | |
|          Third-party Defendants.              ) | |

## ORDER

Before the Court is plaintiff's Motion to Confirm in Part and Vacate/Modify in Part the Arbitration Award, for Summary Judgment with Respect to Legacy's Counterclaims against Summit, and for Summary Judgment with Respect to the Remainder of Summit's Claim against Legacy, filed September 21, 2006. On October 30, 2006, defendants filed their objection, and on December 6, 2006, plaintiff filed its reply. Based upon the parties' submissions, the Court makes its determination.

I.    Introduction

On March 31, 2003, defendant Legacy Corner, L.L.C. ("Legacy"), as owner, and plaintiff Summit Contractors, Inc. ("Summit"), as general contractor, entered into a "cost plus" construction contract ("Construction Contract") under which Summit agreed to build an apartment complex to be known as the "Legacy Corner Apartments." Also on March 31, 2003, Legacy and Summit executed an Identity of Interest Agreement ("Agreement") under which Legacy agreed to pay a fixed

fee to Summit in lieu of a percentage profit under the Construction Contract.[1]

On May 10, 2004, Summit filed the instant action against Legacy for its alleged breach of the Agreement. On June 1, 2004, and based on an arbitration provision in the Construction Contract, Legacy filed a motion to stay the present case and compel arbitration. On August 9, 2004, the Court denied Legacy's motion. On September 7, 2004, Legacy filed counterclaims against Summit for its alleged breach of the Agreement. On December 30, 2005, the Court granted Summit's motion for summary judgment, finding that judgment should be entered in favor of Summit and against Legacy in the amount of $315,279.82, and denied Legacy's cross-motion for partial summary judgment.

Subsequent to the filing of the instant case, an arbitration proceeding was commenced before the American Arbitration Association wherein both Summit and Legacy asserted claims against the other relating to the Construction Contract (the "Arbitration"). Arbitration proceedings commenced before a panel of arbitrators the week of March 27, 2006. On July 7, 2006, the arbitrators rendered their decision, finding that both Summit and Legacy breached the Construction Contract, awarding each a partial recovery on their respective claims, and concluding that Summit is entitled to a recovery against Legacy in the sum of $795,049, plus interest on such amount in the sum of $62,208.41 ("Arbitration Award"). The arbitration panel further found that neither Summit nor Legacy clearly prevailed in the case, did not submit proof of attorneys' fees, and were not entitled to attorney's fees. Summit submitted a motion to modify the arbitration award to allow an award of attorney's fees, and Legacy responded. The arbitration panel denied Summit's request to modify

---

[1] Typically, a construction contract of the type involved in this case would provide for payment of a percentage profit to the contractor as work progresses. In lieu of receiving a percentage profit under the Construction Contract, however, Summit agreed to payment of a fixed fee.

the award.

II.     Discussion

Summit now moves this Court to (1) confirm the merits of the Arbitration Award, (2) vacate/modify that portion of the Arbitration Award denying Summit its attorney's fees, (3) grant summary judgment in favor of Summit with respect to Legacy's counterclaims against it, and (4) grant summary judgment in favor of Summit with respect to the remainder of its claim against Legacy in the amount of $27,750.

    A.     Merits of Arbitration Award

Summit moves the Court to enter judgment confirming the Arbitration Award.[2]  In their response, defendants do not oppose Summit's request to confirm the Arbitration Award.  Having reviewed the parties' submissions, and noting defendants' lack of objection, the Court finds that judgment should be entered confirming the Arbitration Award.

    B.     Denial of attorney's fees

Summit moves the Court to vacate and modify the Arbitration Award as it pertains to attorney's fees.  Defendants assert that the Court should not vacate or modify the Arbitration Award with respect to attorney's fees.

A district court may vacate or modify an arbitration award only for the reasons enumerated in the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10,[3] or in accordance with a few judicially

---

[2]Specifically, Summit moves the Court to enter judgment confirming the Arbitration Award in all respects other than the determination that Summit was not a prevailing party and, thus, not entitled to attorney's fees. As set forth in part II(B), the Court finds that the Arbitration Award as it pertains to attorney's fees should not be vacated or modified.

[3]The FAA allows district courts to vacate an arbitration award for the following reasons:

created exceptions. *Hollern v. Wachovia Sec., Inc.*, 458 F.3d 1169, 1172 (10th Cir. 2006). In the case at bar, Summit relies upon the "manifest disregard of the law" judicially created exception. "Manifest disregard of the law has been defined as 'willful inattentiveness to the governing law.'" *Id.* at 1176 (internal citation omitted). To warrant setting aside an arbitration award based on this exception, "the record must show the arbitrators knew the law and explicitly disregarded it." *Id.* (internal quotations and citation omitted). However, "[m]anifest disregard of the law clearly means more than error or misunderstanding with respect to the law." *ARW Exploration Corp. v. Aguirre*, 45 F.3d 1455, 1463 (10th Cir. 1995) (internal quotations and citation omitted).

Summit asserts that under controlling Oklahoma law, it was clearly the prevailing party in the arbitration proceeding and was clearly entitled to attorney's fees pursuant to Okla. Stat. tit. 12, § 936. Summit further asserts that the arbitrators were aware of the controlling Oklahoma law and disregarded that authority by denying Summit an award of its attorney's fees. Summit contends that this constitutes "willful inattentiveness to the governing law."

Having carefully reviewed the parties' submissions and the applicable Oklahoma law, the Court finds that the arbitrators' application of the law to the facts of this case was not in manifest

---

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10.

disregard of the law. While this Court might believe that the arbitrators' decision was wrong and that Summit is entitled to attorney's fees pursuant to § 936,[4] the Court does not find that such an error can be characterized as "willful inattentiveness to the governing law." As the Tenth Circuit has held, manifest disregard of the law means more than error or misunderstanding with respect to the law; "[e]ven erroneous interpretations or applications of law will not be disturbed." *ARW Exploration*, 45 F.3d at 1463.

Accordingly, the Court finds that Summit's request to vacate/modify the Arbitration Award as it pertains to attorney's fees should be denied.

### C. Legacy's counterclaims

Summit also moves the Court to grant summary judgment in its favor on Legacy's counterclaims. Summit asserts that (1) any claims that Legacy raised or could have raised relating to Summit's performance under the Construction Contract are, pursuant to that contract, precluded from being pursued in a forum other than arbitration; (2) Legacy's counterclaims in this action were encompassed by the claims Legacy did in fact pursue in the Arbitration; and (3) such claims were finally adjudicated in the Arbitration, precluding subsequent litigation in a different forum. Legacy asserts that the Arbitration Award which relates solely to the parties' claims under the Construction Contract has no preclusive effect on Legacy's counterclaims for loan extension fees and an accounting of several allowance items because those claims arise under the Agreement and not the Construction Contract.

Having carefully reviewed the arbitrators' decision, the Court finds that Legacy's counterclaims for loan extension fees and an accounting of certain allowance items were not

---

[4]The Court, however, would note that it is not making such a finding.

addressed in the Arbitration. Because the Construction Contract has an arbitration provision, the Court finds that if Legacy's counterclaims arise under the Construction Contract, the Arbitration Award does have preclusive effect and Summit is entitled to summary judgment. However, because the Agreement does not have an arbitration provision and this Court has found that the Construction Contract's arbitration provision does not govern disputes arising under the Agreement, the Court finds that if Legacy's counterclaims arise under the Agreement, the Arbitration Award does not have preclusive effect and Summit is not entitled to summary judgment.

Regarding Legacy's counterclaim for loan extension fees, the Agreement provides:

> Contractor agrees that it will complete and submit its Certificate of Actual Cost as required by Article 10 of the Contract no later than the end of the 19th month under the Construction Contract. If Owner is liable to pay construction loan extension fees because the Contractor's Certificate of Actual Cost is not completed on a timely basis, Contractor agrees to pay the referenced extension fees.

Agreement at ¶ 4. While this provision references Article 10 of the Construction Contract, the Court finds that Summit's obligation to pay construction loan extension fees if the Contractor's Certificate of Actual Cost is not completed on a timely basis arises from the Agreement itself and not from the Construction Contract. Accordingly, the Court finds that Legacy's counterclaim for loan extension fees was not subject to arbitration. Further, as set forth above, the Court finds that the issue of loan extension fees was not addressed in the Arbitration. The Court, therefore, finds that the Arbitration Award does not have preclusive effect as to Legacy's counterclaim for loan extension fees and that Summit is not entitled to summary judgment as to this claim.

Regarding Legacy's counterclaim for an accounting of certain allowance items, the Agreement provides:

> In addition to its obligations under the Construction Contract,

> Contractor specifically agrees to provide the following allowances/benefits in connection with the Project at its cost:
>
> (a) Payment of building permits and fees up to an aggregate cost of $66,500 (or reimburse same to Owner if paid by Owner).
> (b) Completion of a putting green at a cost of $12,000;
> (c) Completion of a misting system at a cost of $9,000;
> (d) Adding pool security cameras and related improvements at a cost of $4,000;
> (e) Adding bird guards over the laundry facilities at a cost of $4,500;
> (f) Adding a car wash vacuum station at a cost of $10,000;
> (g) Providing compactor equipment at a cost of $16,000;
> (h) Constructing a swimming pool, pool deck and pool fence having an aggregate cost of $150,000;
> (i) Supplying project signage at a cost of $9,000;
> (j) Supplying media equipment at a cost of $9,000;
> (k) Adding PBX in the clubhouse at a cost of $3,000;
> (l) Adding security system wiring at a cost of $16,000;
> (m) Adding wiring for telephone, cable television and internet service at a cost of $45,000; and
> (n) Adding or upgrading carpeting at a cost of $25,000.
>
> For all such improvements, the Contractor will submit final plans and cost estimates for Owner's written consent before the work is commenced.  Contractor will also provide at its cost additional work costing $100,000 (the "Owner's Contingency") which the Owner adds during construction (i.e., improvements in addition to those shown in the plans and specifications and those described above), provided, however, that the $100,000 figure (a) will be decreased by the amount of any cost overruns with respect to the budgeted figures shown above for allowance items, and (b) will be increased by the amount of any cost savings realized with respect to the budgeted figures shown above for allowance items. . . .

Agreement at ¶5.  As specifically stated in paragraph 5, the obligations regarding these allowance items are "in addition to [the] obligations under the Construction Contract." The Court, accordingly, finds that Legacy's counterclaim regarding these allowance items arises under the Agreement and not the Construction Contract and, thus, is not subject to arbitration.  Further, as set forth above, the Court finds that the issue of an accounting for these allowance items was not addressed in the

Arbitration. The Court, therefore, finds that the Arbitration Award does not have preclusive effect as to Legacy's counterclaim for an accounting of certain allowance items and that Summit is not entitled to summary judgment as to this claim.

Accordingly, the Court finds that Summit is not entitled to summary judgment on Legacy's counterclaims for loan extension fees and an accounting of certain allowance items.

### D.     Remainder of Summit's claim

Finally, Summit moves the Court to grant summary judgment in its favor on the remainder of its claim against Legacy. In Summit's reply brief to its initial motion for summary judgment, Summit acknowledged that summary judgment was not then appropriate on the $27,750 potential holdback withheld by Legacy. In the Arbitration Award, the arbitrators determined that $18,500 was properly withheld by Legacy for incomplete punchlist items and credited this amount against the monies awarded Summit on its claims relating to the Construction Contract. Summit, therefore, now moves for summary judgment in its favor in the remaining amount of $27,750. In their response, defendants do not object to Summit's request.

Accordingly, having reviewed the parties' submissions, the Court finds that summary judgment should be granted in favor of Summit on the remainder of its claim against Legacy in the amount of $27,750.

### III.    Conclusion

For the reasons set forth above, the Court GRANTS IN PART and DENIES IN PART Summit's Motion to Confirm in Part and Vacate/Modify in Part the Arbitration Award, for Summary Judgment with Respect to Legacy's Counterclaims against Summit, and for Summary Judgment with Respect to the Remainder of Summit's Claim against Legacy [docket no. 70] as follows:

8

(A)  The Court GRANTS Summit's motion to confirm in part the Arbitration Award and FINDS that judgment should be entered confirming the Arbitration Award;

(B)  The Court DENIES Summit's motion to vacate/modify in part the Arbitration Award;

(C)  The Court DENIES Summit's motion for summary judgment with respect to Legacy's counterclaims against Summit; and

(D)  The Court GRANTS Summit's motion for summary judgment with respect to the remainder of Summit's claim against Legacy and FINDS that judgment should be entered in favor of Summit and against Legacy in the amount of $27,750.

**IT IS SO ORDERED this 27th day of April, 2007.**

VICKI MILES-LaGRANGE
UNITED STATES DISTRICT JUDGE